50 F.Supp. 1010 (1943)
SOCONY-VACUUM OIL CO., Inc.,
v.
SHEEHAN, Collector of Internal Revenue, et al.
No. 294.
District Court, E. D. Missouri, E. D.
July 1, 1943.
Cobbs, Logan Roos & Armstrong, of St. Louis, Mo., for plaintiff.
Harry C. Blanton, U. S. Atty., and Russell Vandivort, Asst. U. S. Atty., both of St. Louis, Mo., for defendant.
*1011 MOORE, District Judge.
This cause having come on for final hearing on the 17th and 18th days of June, 1942, all parties being duly represented, all evidence having been introduced, and all briefs for plaintiff and defendants having been submitted to the Court, the Court, being duly advised, doth make and enter herein the following findings of fact and conclusions of law:

Findings of Fact
1. Plaintiff is and was, at all times mentioned in the petition, a corporation organized and existing under the laws of the State of New York, and was at all such times, and still is, duly qualified to do business in the State of Missouri.
2. At the time of filing the petition herein, and for many years prior thereto, the original defendant, Thomas J. Sheehan, was the duly appointed, qualified and acting Collector of Internal Revenue for the First Missouri District. After the death of Thomas J. Sheehan, the executors and administrator c. t. a. of his estate were substituted as parties defendant herein.
3. Prior to December 31, 1934, and on that date, plaintiff was the owner of all of the capital stock of Lubrite Oil Corporation, an Indiana corporation, of Lubrite Refining Corporation, a Delaware corporation, and of White Star Oil Company, Inc., a Delaware corporation.
4. Said wholly owned subsidiary corporations were solvent corporations and were duly engaged in the business of marketing "Mobilgas", "Mobiloil" and other registered products of plaintiff, and were known and advertised as Socony-Vacuum companies.
5. Prior to December 31, 1934, plaintiff, by a resolution, duly consented to the dissolution of each of its said subsidiaries, and each of said subsidiaries took all legal steps necessary for its voluntary dissolution. By resolutions duly adopted, each of said subsidiaries directed that it be voluntarily dissolved and that its assets be transferred in liquidation and in consequence of dissolution to plaintiff as the owner of all of its capital stock. Each of said subsidiaries, by resolution, also directed its proper officers to take any and all steps and to execute any and all certificates, statements, affidavits, deeds, conveyances, easements and other instruments which might be deemed necessary to consummate its dissolution and to properly transfer all of its assets to plaintiff as its only stockholder.
6. Plaintiff acquired the assets of each subsidiary and undertook the satisfaction of each subsidiary's liabilities. The aggregate amount of cash received by plaintiff from the three subsidiaries was $259,160.31, exceeding the aggregate amount of accounts payable which was $254,535.48. The aggregate amount of current assets received by plaintiff from the three subsidiaries was $1,793,031.41, exceeding the aggregate amount of all liabilities which was $367,311.27.
7. Pursuant to said resolutions, the corporate charters of the respective subsidiaries were surrendered on the following dates: Lubrite Refining Corporation on October 20, 1938; Lubrite Oil Corporation on January 8, 1937; White Star Oil Company on March 21, 1938.
8. On December 31, 1934, in accordance with said resolutions, the officers of each of said subsidiaries duly executed and delivered to plaintiff a general transfer of all of its real estate, leaseholds, personal property, assets and rights in liquidation and in consequence and consideration of its dissolution. Among said assets of each of said subsidiaries, there were a number of pieces of real estate, and, in order to transfer the legal title to said real estate of record, the officers of said subsidiaries executed and delivered to plaintiff separate deeds conveying the real estate owned by each subsidiary in each county or city, and plaintiff recorded said deeds in order to have the legal title to said real estate transferred of record to the name of plaintiff. These deeds were all dated December 31, 1934, and no documentary stamps placed thereon.
9. On or about January 28, 1938, the original defendant herein, as Collector of Internal Revenue, served on plaintiff a notice and demand for the sum of $3,723.50, assessed against plaintiff for documentary stamps in respect to the deeds which said subsidiaries had executed and delivered to plaintiff.
10. On or about February 7, 1938, plaintiff, in order to avoid a levy and distraint on its property, paid to the original defendant herein, as Collector of Internal Revenue, but under protest, said sum of $3,723.50, and thereafter plaintiff filed its claim for a refund of said money with the Bureau of Internal Revenue of the United States. On or about May 5, 1939, the Bureau of Internal Revenue denied said claim, and, the original defendant having *1012 failed and refused to refund said money, plaintiff filed this suit to recover same.

Conclusions of Law
The Court declares the law applicable to the facts in this case to be as follows:
1. Plaintiff, as the owner of all the capital stock of the three solvent subsidiary corporations above mentioned, was the equitable owner of all the real estate and other assets of each of said three subsidiaries before the deeds in question were given. Berl v. Crutcher, 5 Cir., 60 F.2d 440, loc. cit. 444.
2. The deeds given to plaintiff by its said subsidiaries were not needed or given to "transfer the absolute or general title" of the real estate described therein (Reg. 71 (1932) Article 79), but were given and recorded to show the transfer of legal title only, on the records of the county or city in which the lands described in said deeds were located.
3. Section 725 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 635, which imposes a documentary stamp tax upon any "deed * * * whereby any land * * * sold shall be * * * conveyed to, or vested in, the purchaser", does not apply to the deeds given by said subsidiaries to plaintiff, because said lands were not sold by said subsidiaries to plaintiff and plaintiff was not a purchaser thereof.
4. Reg. 71 (1932) Article 111 and letter dated December 21, 1934, of the Bureau of Internal Revenue (but released a few days before said deeds were executed) are applicable to and cover the facts in this case. They provide that "A conveyance of real estate by a corporation without valuable consideration to an owner of all its capital stock, in consequence of its dissolution, is not subject to tax". The deeds here in question and the resolutions authorizing same were executed in liquidation and in consequence and consideration of the dissolution of said subsidiaries.
5. The conveyances in question were not made to the plaintiff in consideration of the payment of the subsidiaries' debts by plaintiff, since each subsidiary transferred assets more than sufficient to satisfy its liabilities. Reg. 71 (1932) Article 115, which provides that "A deed from a corporation, the entire capital stock of which is owned by another corporation, conveying real estate to the latter in consideration of the payment by the grantee of all obligations of the grantor, is subject to tax", is, therefore, not applicable to this case.
6. The land and assets conveyed and transferred by said subsidiaries to plaintiff were not in fact sold by said subsidiaries nor purchased by plaintiff, but were transferred or conveyed without valuable consideration and in consequence of dissolution.
7. No documentary stamp tax should ever have been assessed on or collected on account of said transfers.
8. Plaintiff's claim for a refund of the money paid by it to the Collector on account of his demand for documentary stamp tax on said transfers should have been allowed.
9. Plaintiff is entitled to judgment against the defendants as prayed in its petition.