## National Dairy Products Corp. v. Gleeson

*William H. Wood*, for plaintiff.
*Sidney Margulies*, for defendant.

NEELY, J., June 30, 1958.—This is a proceeding in equity commenced by complaint filed May 24, 1957. Plaintiff seeks to restrain defendant, the Secretary of Revenue of this Commonwealth, from collecting the so-called retail sales tax assessed by defendant under the Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, as amended, 72 PS §3403-1, et seq., upon the transfer to plaintiff of certain motor vehicles in a corporate merger.

The matter is before us on the complaint and answer, the stipulation of the parties and the record made at a hearing before the chancellor on January 7, 1958. At this hearing, facts admitted by the pleadings were put into the record in addition to the stipulation.

Plaintiff in its complaint avers that it is a Delaware corporation and proposes to acquire the motor vehicles in question pursuant to its joint plan of merger with Rieck Dairy Company, a Pennsylvania corporation, and Supplee-Wills-Jones Milk Company, also a Pennsylvania corporation, both wholly-owned subsidiaries. The complaint avers that under the plans of merger plaintiff is to be the surviving corporation. It is averred that plaintiff and its two subsidiaries have been ad-

vised by the Bureau of Motor Vehicles in the Department of Revenue that plaintiff's request for transfers of titles and issuance of new license plates for the motor vehicles of the subsidiaries affected by the intended merger will be refused "unless the Plaintiff first pays to the Bureau the Pennsylvania Selective Sales or Use Tax which the Bureau claims will be due in connection with the Plaintiff's acquisition of said motor vehicles, . . . computed at the rate of 3% upon the total fair market value of all the motor vehicles involved, . . ." [1]

Plaintiff denies its liability for this tax and by its complaint asks that we restrain defendant from imposing and collecting the same. In his answer defendant avers that a tax would be properly assessable under these plans of merger and would be due and owing the Commonwealth. Defendant denies that plaintiff is entitled to equitable relief. Many factual averments in the complaint are admitted. Substantially, defendant's answer controverts only plaintiff's legal conclusion that the tax could not be legally assessed.

Plaintiff has posted bond with adequate surety for the payment of any tax found to be due, and pursuant to an agreement of the parties the court approved the same. As a result of this agreement and the posting of the security, the Commonwealth waived the immediate collection of the tax before the issuance of title certificates and agreed to look to the bond for the payment of any tax found to be due.

The parties in their stipulation have agreed upon those facts which are essential to the disposition of this case. In addition to the stipulation, we have also

---

[1] Section 202 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §32(a), directs the Secretary of Revenue to ascertain whether all taxes due the Commonwealth have been paid before the issuance of any certificate of title for a motor vehicle.

taken into consideration the facts admitted in plaintiff's complaint and put upon the record at the hearing. Since the stipulation contains those facts that are essential to the chancellor's decision in the matter, we accept that stipulation as the findings of the chancellor and incorporate the same herein by reference. We will discuss those findings deemed particularly pertinent to this decision. We have in addition, of course, considered the admitted allegations in plaintiff's complaint. It is plaintiff's contention:

1. That the transfer of the motor vehicles to the surviving corporation, plaintiff herein, was not a sale at retail within the meaning of the Selective Sales and Use Tax Act, and that the act, therefore, would not impose a tax upon that transfer.

2. That the transfer of the motor vehicles to the surviving corporation, plaintiff herein, was an isolated transaction; that isolated transactions generally are excluded from the tax under section 203(a) of the Selective Sales and Use Tax Act, 72 PS §3403-203(a), except as to sales involving motor vehicles; that "imposition of tax on isolated sales involving motor vehicles when all other isolated sales of tangible personal property are exempt from tax, is contrary to the equal protection of the laws clause of the Fourteenth Amendment to the United States Constitution and the uniformity of taxation clause of article IX, section 1, of the Pennsylvania Constitution."

## Discussion

The proposed mergers, as averred in plaintiff's complaint, were consummated on May 31, 1957. There were transferred to the surviving corporation the motor vehicles in question, and our problem is whether that transfer was a sale at retail so as to entitle the Commonwealth to collect the sales and use tax on the transfer at the rate of three percent, plaintiff's bond being

posted to secure the payment thereof if any tax is found to be due. There were transferred to plaintiff, the surviving corporation, 506 motor vehicles of Rieck Dairy Company and 751 motor vehicles of Supplee-Wills-Jones Milk Company.

The merger of the two subsidiary or constituent corporations into plaintiff was effectuated on the basis of a resolution adopted by the board of directors of plaintiff on April 18, 1957, which reads in its pertinent provisions as follows:

"RESOLVED, that the Corporation merge into itself (plaintiff herein) . . ., Rieck Dairy Company and Supplee-Wills-Jones Milk Company, corporations organized and existing under the laws of Pennsylvania, . . . all of the outstanding stock of each of which is owned by the Corporation, and that the Corporation assume all of the liabilities and obligations of said corporations." (Parenthesis supplied.)

Pursuant to this resolution, on May 31, 1957, articles of merger between plaintiff and Rieck Dairy Company were filed with the Secretary of the Commonwealth and approved. Such articles were likewise filed between plaintiff and Supplee-Wills-Jones Milk Company and duly approved on the same day. And on the same day certificates of ownership in connection with the merger of both of these subsidiaries were filed and approved by the Secretary of the State of Delaware. The mergers became effective May 31, 1957.

The plans of merger approved by the Secretary of the Commonwealth and the Secretary of State of Delaware provided that all outstanding shares of stock of the constituent subsidiary corporations shall be cancelled; all rights, privileges, powers and franchises of the constituent corporations, and all property, shall be deemed to be vested in and devolved upon the surviving corporation as of May 31, 1957; and that all property, rights, privileges, powers and franchises of

plaintiff shall continue to be, and all property, rights, powers, privileges and franchises of the constituent corporations shall thereafter be the property of the surviving corporation. The constituent corporations as of May 31, 1957, when the plans of merger were duly approved by the officials of both States, actually ceased their existence.

Both of the subsidiary corporations had been engaged in the business of purchasing, manufacturing and selling dairy products in Pennsylvania, Rieck Dairy Company in Pittsburgh and Supplee-Wills-Jones Milk Company in Philadelphia. At the time the plans of the proposed merger were adopted, the outstanding common stock owned by plaintiff in Rieck Dairy Company and involved and cancelled in the merger amounted to 10,000 shares, compared to 300,000 shares that had been issued and outstanding by the subsidiary as of August 31, 1956. When the plans of merger were adopted, there were 5,000 shares of stock of Supplee-Wills-Jones Milk Company outstanding, compared to 67,985 shares owned by plaintiff on September 30, 1956.

There had been prior dealings between the subsidiaries and the parent corporation, as a result of which plaintiff took over assets of the subsidiaries and cancelled outstanding stock which it owned. In the case of Rieck Dairy Company this cancellation of stock amounted to 290,000 shares, and as to Supplee-Wills-Jones Milk Company the cancellation amounted to 62,985 shares.

In determining whether the transfer of these 1,257 automobiles, effectuated when these plans of merger became effective, amounted to a sale within the definition of the Selective Sales and Use Tax Act, we must consider the provisions of the statute concerning the effect of merger in this Commonwealth and in the State of Delaware.

Section 905 of the Business Corporation Law of May 5, 1933, P. L. 364, as amended, 15 PS §2852-905, provides that: "The articles of merger . . . shall be delivered to the Department of State," and if the articles conform to law shall be approved and a certificate of merger shall be issued. And section 906 of the act, as amended, 15 PS §2852-906, provides that: "Upon the approval of the articles of merger . . ., the merger or consolidation shall be effective. The certificate of merger . . . shall be conclusive evidence of the performance of all conditions precedent. . . ." The stipulation of the parties does not state that a certificate of merger was issued. However, the articles of merger were approved by the Department of State on May 31, 1957, and the merger then was effective on that date. And in section 907, 15 PS §2852-907, it is provided:

"Upon the merger . . . becoming effective, the several corporations parties to the plan of merger . . . shall be a single corporation which, in the case of a merger, shall be that corporation designated in the plan of merger as the surviving corporation, and, in the case of a consolidation, shall be the new corporation provided for in the plan of consolidation. The separate existence of all corporations parties to the plan of merger . . . shall cease, except that of the surviving corporation, in the case of a merger. . . . All the property, real, personal, and mixed, of each of the corporations parties to the plan of merger, and all debts due on whatever account to any of them, . . . shall be taken and deemed to be transferred to and vested in the surviving or new corporation, as the case may be, without further act or deed."

The counterpart of section 907, supra, in the Delaware statute, section 253(b) of the General Corporation Law, Delaware Code, title 8, §253, while differ-

ing in its language, accomplishes the same result.[2] Under section 907 of the Pennsylvania Corporation Law, the separate existence of these constituent corporations, the subsidiaries, ceased upon the effective date of these mergers on May 31, 1957.

Having in mind, then, that these subsidiaries went out of existence on that date, our problem is whether the transfer by the subsidiaries to the parent company, pursuant to a plan of merger which put them out of existence, could constitute a sale at retail. And this question, of course, brings us to the basic point in this case: Namely, what is a sale at retail under the Selective Sales and Use Tax Act? We must turn to the act itself and its amendments for pertinent definitions.

The Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, supra, has been amended. And section 2(e) of the Amendatory Act of May 24, 1956, P. L. 1707, 72 PS §3403-2(e), defines "Purchase at Retail" as "The acquisition for a consideration of the ownership, custody or possession of tangible personal

---

[2] Section 253(b) reads:

"(b) Upon the recording of the certificate pursuant to subsection (a) of this section, all of the estate, property, rights, privileges and franchises of such other corporation shall vest in and be held and enjoyed by such parent corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by such parent corporation, and except as hereinafter in this section provided, in its name, but subject to all liabilities and obligations of such other corporation and the rights of all creditors thereof. The parent corporation shall not thereby acquire power to engage in any business, or to exercise any right, privilege or franchise, of a kind which it could not lawfully engage in or exercise under the provisions of the law by or pursuant to which such parent corporation is organized. The parent corporation shall be deemed to have assumed all the liabilities and obligations of the merged corporation, and shall be liable in the same manner as if it had itself incurred such liabilities and obligations."

property." And section 2(g) of this amendatory act, 72 PS §3403-2(g), defines "Purchaser" as "Any person who acquires, for a consideration, the ownership, custody or possession by sale, lease or otherwise, of tangible personal property." And "Sale at Retail", section 2(j) of the same amendatory act of 1956, 72 PS §3403-2(j), is defined as "Any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, . . . by whatsoever means the same shall have been effected." A sale at retail, then, under the definition of the Selective Sales and Use Tax Act, is a transfer for a consideration. Extensive decisions as well as statutory law indicate the meaning of the term "transfer for consideration."

Bouvier defines "sale" as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." "A sale is the transfer of property and title thereto by agreement, for a consideration": Commonwealth of Pennsylvania v. Frick Company, 55 Dauph. 62, 65 (1944). See also Commonwealth of Pennsylvania v. Rust Engineering Company, 55 Dauph. 434 (1944) ; Neal D. Ivey Company v. Franklin Associates, Inc., 370 Pa. 225, 238 (1952). In Koehler v. St. Mary's Brewing Company, 228 Pa. 648, 653 (1910), the Supreme Court said:

"A sale is 'an agreement by which one of two contracting parties, called the seller, gives a thing and passes the title to it, in exchange for a certain price in current money, to the other party, who is called the buyer or purchaser, who, on his part, agrees to pay such price:' 2 Bouvier's Law Dictionary (Rawle's Revision), p. 943. 'A sale may be defined as a contract, founded on a money consideration, by which the absolute or general property in the subject of the sale is transferred from the seller to the buyer:' 24 Am. & Eng. Ency. of Law (2d ed.), p. 1022. A sale is a transfer of the absolute or general property in a thing for

a price in money: Benjamin on Sales (6th ed.), sec. 1. 'A sale is a word of precise legal import, both at law and in equity. It means at all times a contract between parties, to give and to pass rights of property for money, which the buyer pays, or promises to pay, to the seller for the thing bought and sold:' Williamson v. Berry, 8 Howard, 544; Huthmacher v. Harris's Admrs., 38 Pa. 491; Bigley v. Risher & Wilson, 63 Pa. 152."

And The Sales Act of May 19, 1915, P. L. 543, 69 PS §1, repealed by the Uniform Commercial Code, defined a sale as follows:

"A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price."

And the recent definition of a sale in the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 2-106, 12 A PS §2-106, is as follows:

"(1) . . . A 'sale' consists in the passing of title from the seller to the buyer for a price. . . ."

A consideration is something of value that moves from one person to another. A thing is not consideration unless regarded as such by both parties and "must be unimagined, substantive and veritable": Wilentz v. Hendrickson, 133 N. J. Eq. 447, 33 A. 2d 366, 384 (1943) ; Michael v. Holland, 111 Ind. App. 34, 42, 40 N. E. 2d 362, 365 (1942) ; McGovern v. City of New York, 235 N. Y. 275, 138 N. E. 26, 31 (1931). Also see Williams Mfg. Co. v. Prock, 86 F. Supp. 447 (1949).

In a sale the vendor passes title to the vendee and there is in return consideration which moves to him generally known as the price. It is basic in the concept of the term "sale" that in exchange for the passing of title to the vendee the vendor receives his consideration, the price.

The Commonwealth argues that since the Selective Sales and Use Tax Act carries its own definition of

"sale at retail," we must be unconcerned with the common law concept of a sale, and that reference to the text of other statutes is irrelevant. Citing Blauner's, Inc., v. Philadelphia, 330 Pa. 342, 349 (1938). It is, however, a rule of statutory construction that in a statute "words . . . shall be construed according to . . . their common and approved usage . . .": Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533. ". . . 'Statutes are presumed to employ words in their popular sense . . .'": Commonwealth v. Bay State Milling Co., 312 Pa. 28, 31 (1933) ; Commonwealth v. Meinhart, 173 Pa. Superior Ct. 495 (1953) ; Brown v. Personeni, 326 Pa. 190, 192 (1937).

Under the provisions of the Selective Sales and Use Tax Act, there is only a sale at retail when there is a consideration for the transfer of tangible personal property. It is our duty, then, to consider what is the usual and accepted meaning of the term "consideration" in the law of sales, and the foregoing authorities are cited to show what has usually been meant by that term. The statutes cited above are merely declaratory of the common law and help to explain what historically has been the generally accepted meaning of the term "consideration" in the sale of tangible personal property.

Since these authorities show that in the sale of personal property the term "consideration" refers to something moving from one person to another, quid pro quo (12 Am. Jur. §72, Contracts, p. 564), to the vendor the price and to the vendee the title, and since consideration is something that the parties themselves regard as such, there is another line of cases that must be considered because they discuss a principle of law applicable to this case. We will proceed to consider this line of authority.

It has been held that in a corporate merger the transfer of property is by operation of law and not as the voluntary act of the parties. Under this doctrine, the transfer of personal property as part of the assets in the merger of two corporations could not be for consideration since the parties themselves do not effect the transfer. In other words, where the transfer is by operation of law, it would not be the act of the parties wherein a consideration is agreed upon. We are aware that here there was a plan of merger, but the essential language concerning the transfer of assets in that plan was mandated by the applicable statutes and the transfer was by operation of law, in our judgment, under the facts in this case.

In United States v. Seattle-First National Bank, 321 U. S. 583, 587, 588, 589 (1944), in discussing the consolidation of a State bank with a national banking association, the Supreme Court said:

". . . We must look only to the immediate mechanism by which the transfer is made effective. If that mechanism is entirely statutory, effecting an automatic transfer without any voluntary action by the parties, then the transfer may truly be said to be 'wholly by operation of law.' . . .

"Thus it is the National Banking Act that is the mechanism by which the transfer . . . is made effective. No voluntary act by the parties is necessary. It follows that the transfer occurred 'wholly by operation of law.' The mere fact that the parties here saw fit to include in their consolidation agreement a provision that all assets of each constituent bank 'shall pass to and vest in the consolidated association' does not make the transfer any less than one 'wholly by operation of law.' "

To the same effect see also Dodier Realty & Investment Company v. St. Louis National Baseball Club, Inc., 238 S. W. 2d 321 (Mo., 1951); United States v.

Niagara Hudson Power Corporation, 53 F. Supp. 796, 801 (1944); Rochelle Investment Corporation v. Fontenot, 34 F. Supp. 118 (1940). In two Pennsylvania cases dealing with (a) merger and (b) consolidation of corporations, our appellate courts indicated that the transfer of assets is by operation of law: Pittsburgh Terminal Coal Corporation v. Potts, 92 Pa. Superior Ct. 1, 13 (1927); Buist's Estate, 297 Pa. 537 (1929), wherein the Supreme Court said, at pages 541-42:

". . . Care should be taken to distinguish consolidation from proceedings under the Act of 1876, P. L. 33, often referred to as a 'short form merger' (see York Haven W. & P. Co. v. Pub. Ser. Com., 287 Pa. 241); . . .

"The new conception was not on the basis of sale, but of a merger or consolidation of assets, which is opposed to sale. To have effected a sale by the old company to the company created by merger must of necessity have meant a severance of all rights in the shareholders. But those rights that once existed as to the property of the old company prior to the merger still continue in the new company, including in addition an interest in the property of the other constituent company. . . .

"From a consideration of the foregoing, it is apparent that a merger of two corporations cannot be considered as a sale of their property by the constituent companies, and the issuance of the new capital stock is merely the issuance of new evidence of ownership to the shareholders."

The Commonwealth cites a number of Federal cases wherein they contend the ruling of the Supreme Court in the Seattle-First National Bank case was not followed. In none of these Federal cases cited by the Commonwealth was there involved the transfer of assets from the merging to the merged corporation. In the

case before us, the subsidiary is the merging corporation and plaintiff, the parent corporation, is the merged corporation. None of the cases cited by the Commonwealth derogate from the Supreme Court's ruling, namely, that the transfer of assets from the merging to the merged corporation is by operation of law.

Many of the cases cited by the Commonwealth involve the question of the payment of the Federal stock transfer tax in corporate mergers. This tax was imposed pursuant to an Act of Congress, and also an administrative regulation stating that where "the transfer is wholly by operation of law," it is not subject to this tax. The administrative regulation defined transfers "wholly by operation of law" as being those "which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor." We mention some of these Federal cases cited by the Commonwealth involving Federal stock transfer tax: Emporium Capwell Co. v. Anglim, 9 Cir., 140 F. 2d 224, 226 (1944) ; Koppers Coal & Transportation Co. v. United States, 3 Cir. 107 F. 2d 706 (1939) ; State Street Trust Co. v. Hassett, 1 Cir., 134 F. 2d 156 (1943) ; City Bank Farmers Trust Co. v. Hoey, 2 Cir., 125 F. 2d 577 (1942) ; Niagara Hudson Power Corporation v. Hoey, 2 Cir., 117 F. 2d 414 (1941) ; American Processing & Sales Co. v. Campbell, 7 Cir., 164 F. 2d 918 (1947) ; U. S. Industrial Chemicals, Inc., v. Johnson, 2 Cir., 181 F. 2d 413 (1950) ; Weil v. United States, 2 Cir., 115 F. 2d 999 (1940). We have carefully examined the foregoing cases and find that they are inapplicable in the situation with which we are here concerned.

In Cortland Specialty Co. v. Commissioner of Internal Revenue, 2 Cir., 60 F. 2d 937 (1932), also cited by the Commonwealth, the court held that for purposes of Federal income tax, the gain from the transfer of assets from one corporation to another was taxable.

And in Greyhound Corporation v. United States, 7 Cir., 208 F. 2d 858 (1954), the court simply held that where there was a transfer of a solvent subsidiary's assets by assignment to the parent company, the Federal documentary stamp tax was payable.

Obviously, the term "wholly by operation of law," as spelled out by the Federal administrative regulation, has a restricted meaning with respect to stock transfers as compared to the Supreme Court's use of a similar phrase when applied to the transfer of the assets of a corporation in a merger. In none of these cases cited by the Commonwealth is it suggested that the Supreme Court's decision in the Seattle-First National Bank case is inapplicable where the statute expressly provides that in a corporate merger all assets are deemed to have been transferred from the merging to the merged corporation.

It is interesting to note that in United States v. Niagara Hudson Power Corporation, 53 F. Supp. 796, supra, the court held that in the transfer of stock from the subsidiary to the parent corporation in a merger, the stock transfer tax was payable, but that the change of title to the realty in the same merger was not a taxable transaction because there was no sale. The court pointed out that the documentary stamp tax was imposed only where there was a deed or conveyance.

With respect to the Stock Transfer Act, the court in the Niagara Hudson Power Corporation case cited Raybestos-Manhattan, Inc., v. United States, 296 U. S. 60 (1935), in which the Supreme Court said, inter alia, at page 62: ". . . the statute speaks of transfers, *to be taxable.* . . . It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another." (Italics supplied).

As to the transfer of realty, however, the court in the same case pointed out that to be taxable it was necessary that the transfer amount to a sale of the

realty, and on this point we quote from the court's opinion in 53 F. Supp. 796, supra, at page 801:

"In Cortland Specialty Co. v. Commissioner of Internal Revenue, 2 Cir., 60 F. 2d 937, it is said—'Reorganization, merger, and consolidation are words indicating corporate readjustments of existing interests. They all differ fundamentally from a sale where the vendor corporation parts with its interest for cash and receives nothing more.' Page 939.

"In New York Central R. Co. v. Commissioner of Internal Revenue, 2 Cir., 79 F. 2d 247, certiorari denied Helvering v. New York Central R. Co., 296 U. S. 653, 56 S. Ct. 370, 80 L. Ed. 465, the court said—'The consolidated corporation does not succeed to the rights and liabilities . . . as a purchaser but as a successor by operation of law.' Page 249 of 79 F. 2d.

"If, therefore, Northern acquired title to the realty otherwise than as a purchaser, it is evident that this change of title did involve[3] a sale, for there can be no sale unless there is a purchaser.

"In my opinion there is no conveyance of 'realty sold' taxable under Schedule A(8) where a change of title to real estate is effected solely as a result of the filing of a Certificate of Consolidation under the New York Stock Law. . . . See Rochelle Investment Corporation v. Fontenot, D. C., 34 F. Supp. 118; Socony-Vacuum Oil Co. v. Sheehan, D. C., 50 F. Supp. 1010."

Our conclusion that the transfer of the assets from these subsidiaries to the parent corporation, plaintiff herein, was by operation of law is not affected by the fact that the assignments were executed from the constituents to the parent company on the effective date of the mergers, May 31, 1957. These assignments apparently were submitted to the Department of Revenue for the purpose of obtaining certificates of title in

---

[3] Quotation is accurate: Should it read "did not involve"?

the name of plaintiff. The merger documents and the action of the State officials would have been sufficient for this purpose. The parties have stipulated that the motor vehicles were acquired as an incident of the mergers. And our act of assembly provides that in these mergers: "All the property, . . . shall be taken and deemed to be transferred to and vested in the surviving . . . corporation."

It is important to bear in mind that we are here considering essentially the question as to whether there was any consideration for the transfer. Where the transfer is by operation of law, as is the case here, and where the law deems the assets to have been transferred, then the law itself removes from the transfer any concept of quid pro quo on the part of the corporations involved in the merger. In this connection, see Rochelle Investment Corporation v. Fontenot, 34 F. Supp. 118, supra; Socony-Vacuum Oil Co., Inc. v. Sheehan, 50 F. Supp. 1010 (1943), in both of which cases it was held that the transfer of assets in connection with a merger or dissolution was without consideration.

It is interesting to note that both parties agree that the administrative officials in the State of Ohio have ruled that State's sales tax does not apply to corporate mergers. We cite this merely as a matter of interest and are not basing our decision in this case on the action of the Ohio officials.

When we apply the principles which we have discussed here to the facts in this case, it becomes apparent that the subsidiary corporations have received nothing in exchange for the title which was passed to the surviving corporation, plaintiff herein. The title of these motor vehicles under the statutes and under the plans of merger passed when these plans of merger became effective on May 31, 1957, whereupon the subsidiary corporations under the plain language of

our Business Corporation Law and the applicable Delaware statute ceased to exist. Nothing, then, of legal value could have moved from the surviving to the constituent corporations because the latter, as subsidiaries, went out of existence at the same time that plaintiff acquired title to these vehicles.

Furthermore, the very nature of these transactions would seem to disprove any idea that the parties regarded that there was any consideration for the transfer. The parent company owned all the stock of its subsidiaries which were doing business in Pennsylvania. It caused its stock to be retired and took over the assets. How there was any consideration moving to the subsidiaries as vendors in this transaction it is indeed difficult to conceive and this brings us to the definition of "vendor" under the act.

In section 2(o) of the amendatory act of 1956, 72 PS §3403-2(o), "Vendor" is defined as "Any person maintaining a place of business in this Commonwealth, selling or leasing tangible personal property, the sale or use of which is subject to the tax imposed by this act." And section 201(a), 72 PS §3403-201(a), imposes the tax in the following language:

"(a) There is hereby imposed upon each separate sale at retail of tangible personal property within this Commonwealth a tax of three per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided."

This section makes the vendor the collector with the responsibility of turning the amount of the tax over to the Comonwealth.

The so-called vendor in this transaction went out of existence when the mergers were effected. The subsidiaries thereby forfeited all their rights, powers and franchises. How could they be expected to exercise any duties in connection with the collection of this tax

and its payment to the Commonwealth when their corporate existence ceased at the time of the transfer? We, therefore, believe (a) that the transfer of these motor vehicles was accomplished pursuant to the general plans of merger and the statutes when those plans were approved and made effective by the State officials, and (b) that there was not a transfer of the motor vehicles for consideration within the meaning of the Selective Sales and Use Tax Act. Hence, that tax is not payable on the motor vehicles in question.

Since we are of the view that the act does not impose a tax on the transfer of these motor vehicles, it would be inappropriate for us to discuss the constitutional question involving equal protection of the laws under the Federal Constitution or article IX of our own State Constitution.

The general rule, of course, is that a statute will be presumed to be constitutional until its constitutionality is successfully attacked: English v. Robinson Township School District, 358 Pa. 45 (1947); Brereton Estate, 355 Pa. 45 (1946); Giampalo v. Taylor, 335 Pa. 121 (1939); Commonwealth v. Flickinger, 165 Pa. Superior Ct. 95 (1949), affirmed in 365 Pa. 59 (1950).

" 'A court will never heed objections to the constitutionality of an act of assembly unless the complainant is affected by the particular feature alleged to be in conflict with the Constitution,' and this, of course, means harmfully affected": Commonwealth v. Loftus, 292 Pa. 395, 397 (1928).

". . . a litigant who has not shown that he is adversely affected by the actual operation of a statute cannot question its validity": Rich Hill Coal Company v. Chesnut, 355 Pa. 13, 18 (1946).

Plaintiff has filed requests for conclusions of law. The first, second, third, fourth and ninth requests are affirmed. The fifth, sixth, seventh and eighth requests

are not answered because the requested conclusions do not affect plaintiff.

Defendant has likewise filed requests. The second request is affirmed. The first, third, fourth, fifth and eighth requests are refused. The sixth and seventh requests are not answered because the requested conclusions do not affect either of the parties in the transactions involved in this proceeding.

In view of the foregoing, we make the following

### Conclusions of Law

1. The joint plan of merger between plaintiff and its two wholly-owned subsidiaries, Rieck Dairy Company and Supplee-Wills-Jones Milk Company, when it was consummated, approved and made effective by the Secretary of the Commonwealth and by the Secretary of State of Delaware, effected the transfer of 1,257 motor vehicles from the subsidiaries to plaintiff.

2. All the assets, upon such approval, are deemed to have been transferred by operation of law.

3. There was no consideration which moved from plaintiff to these subsidiary corporations in connection with that transfer.

4. The transfer, being without consideration, was not a sale at retail within the meaning of the Selective Sales and Use Tax Act.

5. The mergers involving Rieck Dairy Company and Supplee-Wills-Jones Milk Company, the merging corporations, with plaintiff herein, the merged corporation, became effective on May 31, 1957.

6. When these mergers became effective, the subsidiary or constituent corporations went out of existence and could not then have been vendors within the meaning of the Selective Sales and Use Tax Act, and could have had no responsibility or duty to collect the tax and remit the same to the Department of Revenue of this Commonwealth.

7. There is no liability to the Commonwealth for the payment of any tax under the Selective Sales and Use Tax Act on account of the transfer of the motor vehicles in question from the subsidiaries to the parent company, plaintiff herein, pursuant to the joint plan of merger.

8. Plaintiff and its surety should be discharged from any liability on their bond, which bond was filed to secure the payment of any selective sales and use tax assessable against the motor vehicles transferred in the mergers of these corporations.

### Decree Nisi

And now, June 30, 1958, it is ordered, adjudged and decreed that defendant be and hereby is restrained from imposing upon plaintiff the sales and use tax under the Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, as amended, upon plaintiff's acquisition of 1,257 motor vehicles transferred from Rieck Dairy Company and Supplee-Wills-Jones Milk Company to plaintiff as an incident of the mergers consummated and effective on May 31, 1957, between plaintiff and its above-named two wholly-owned subsidiaries; that defendant is restrained from assessing or collecting from plaintiff any tax imposed under the Selective Sales and Use Tax Act on account of the transfer of the above-mentioned vehicles; that plaintiff and its surety are hereby discharged from any liability under the bond that has been filed in these proceedings in the principal amount of $40,000 conditioned for the payment of any tax assessed under the said Selective Sales and Use Tax Act.

The prothonotary is directed to enter this decree nisi and to notify the parties to this proceeding or their counsel forthwith. If no exceptions are filed within 20 days after the entry of this decree, a final decree will be entered.