**STATE STREET TRUST CO. v. HASSETT, Collector.**

**HASSETT, Collector, v. STATE STREET TRUST CO.**

**Nos. 3829, 3830.**

Circuit Court of Appeals, First Circuit.

March 3, 1943.

Willard B. Luther and Peabody, Arnold, Batchelder & Luther, all of Boston, Mass., for State Street Trust Co.

George H. Zeutzius, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to the Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for Hassett, Collector.

Before MAHONEY and WOODBURY, Circuit Judges and PETERS, District Judge.

MAHONEY, Circuit Judge.

Cross appeals have been taken from a judgment in favor of the plaintiff, State Street Trust Company, in the sum of $359 with interest. The plaintiff sought a refund under the provisions of Section 800, Schedule A(3) (9), Revenue Act of 1926, Chapter 27, 44 Stat. 9, as amended,[1] 26 U. S.C.A., Int.Rev.Acts, pages 284, 289, 297 of documentary stamp taxes assessed and paid by it. The facts have been stipulated and are substantially as follows:

In July, 1936, the Union Trust Company of Boston, hereafter called "Union", was merged into the taxpayer, State Street Trust Company, hereafter called "State", both Massachusetts corporations, in accordance with the terms of a written agreement previously entered into by the two companies. By a bill of sale and acknowledgment of liability, Union sold, assigned, transferred and delivered to State all of its assets and property. At the time of the merger, Union owned and held securities in its own right, in a fiduciary capacity, and also as agent or custodian. The securities in question upon which stamp taxes were paid have been placed in groups by the district judge and for the sake of convenience we follow his grouping.

Group I consists of securities held in accordance with agency agreements. These securities were initially registered in the name of nominee partnerships, endorsed in blank and held by Union. Upon merger Union delivered these securities to State. None of the securities registered in the names of the nominee partnerships was re-registered after the merger but continued as before. The district judge, recited in his opinion that the agency accounts were agreements under which Union collected income, dividends and matured securities, supplied information to the depositors and prepared income tax returns for them. The securities held by Union prior to the merger which were in the name of its nominees

1 "Sec. 800. On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax."

were first placed in the name of nominees in accordance with verbal agreements that the securities should be so held. In order to accomplish this result the depositors either endorsed their certificates in blank on the assignment form thereon or signed a separate assignment thereof. In at least two instances, the agency accounts were opened initially by cash deposits with which the securities were purchased and the securities were placed immediately in the name of Union's nominees. Each party whose securities were held by Union under such agency agreements promptly, after merger, executed a form by which he accepted and approved the substitution of State for Union as agent under the agency agreement and appointed the plaintiff successor agent. By separate agreement between Union and its nominee partnership, the latter waived and disclaimed in favor of Union all right, title and interest in such securities.

In Groups II and IV, securities were held by Union in its own name in its capacity as fiduciary under testamentary trusts and under living trusts. After the merger, these securities were transferred from the name of Union to the name of State, as fiduciary, or to a nominee partnership.

In Groups III and V, Union held securities under testamentary and living trusts in the name of its nominees in its fiduciary capacity. After the merger these securities were delivered to the taxpayer but remained in the name of the same nominees.

The lower court held that the securities in Group I were not subject to the documentary stamp tax on the ground that there were no transfers of the legal or beneficial title and that only custody was changed. As to the securities in Groups II, III, IV and V, it held that after the merger they were owned by the taxpayer and that there was a transfer within the meaning of the provisions of the Act. With these conclusions we agree.

■ Defendant takes the position with reference to securities in Group I, that by virtue of the blank endorsements by the nominee partnerships and delivery to Union, Union held legal title thereto and that after the merger it either transferred or delivered legal title to State. It contends that the agency agreements were supplemented by verbal agreements which, in the first instance, permitted Union to surrender certificates delivered to it by de-

positors to the issuing corporations and that thereafter new certificates were issued in the name of the nominees, who received the record title. As a result of the endorsement by these nominees, it is argued, Union received legal title and undertook to hold these securities as a trustee or fiduciary. At any rate, it is said that Union was the holder of legal title which it could and did transfer. It is further contended that the district court erred because it misapplied City Bank Farmers Trust Company v. Hoey, 2 Cir., 1942, 125 F.2d 577. It is stated that that case is not in point because there the court held as to custodian securities that there was no transfer of legal or beneficial title and that here there was such a transfer. We have had occasion to inspect the record and briefs in that case and we are of the opinion that the custodian transactions there bear a close resemblance to the agency accounts in the instant case. In any event, we are satisfied that insofar as the agency accounts are concerned, Union did not transfer legal title to State within the provisions of the Stamp Tax Act. The mere fact that Union held certificates endorsed in blank does not prove that as between Union and the depositors it held legal title. Union had a power to pass full legal title to a bona fide purchaser but as between Union and its depositors, the depositors could have introduced the agency agreements to show the exact nature of their relationship with Union. It is true that by supplemental agreements new shares of stock were issued, the record title to which was in the name of the nominees, but there is no evidence that the depositors intended to alter the agency relationship and to create a trust relationship. Had the depositors originally endorsed their shares in blank to Union for the purpose of having Union hold these shares in custody, Union would have had the power to defeat their title but it could not be said that Union was more than an agent of its depositors.

■ We come now to a consideration of Groups II, III, IV and V, in which Union was trustee for its depositors and held legal title in its own name or in the name of its nominees in its fiduciary capacity. The district court on the authority of the City Bank case, supra, held that for all intents and purposes State owned the securities after the merger and that there was a transfer of title within the meaning of the provisions of the Revenue Act. The

facts in that case are quite like those in the instant case. There, as here, transfers resulted from the voluntary act of the parties; that is, a merger of one company into another. Plaintiff urges that the transfers here involved are, however, by operation of law and are thus exempt from the provisions of the taxing act. The Act itself does not provide any exemptions for transfers by operation of law and the only exemptions are those found in Regulations 71 (1932). Article 35(g), (h) and (r),[2] the only provisions under which plaintiff may claim an exemption, deal with transfers by operation of law but do not cover precisely the facts before us. We recognize, for example, that the resignation of a trustee is in a sense a voluntary act and yet a transfer from a resigned trustee to a succeeding trustee is exempt under Article 35(h). We do not feel free, however, to enlarge the scope of the exemptions found in the Regulations. As was significantly stated in this connection in the City Bank case, supra, 125 F.2d at page 579:

"It is urged that the Regulations are unreasonable in excluding from the exemptions a case such as this, while including others much like it. We are inclined to agree that there is not much reason in the distinctions in that respect, and we confess that it irks us to decide this issue against appellee. But we have no administrative power to amend the Regulations. It might perhaps be true (although we do not so decide) that such unreasonableness invalidates the Regulations and destroys all the exemptions described therein; but it cannot be said that such unreasonableness widens the exemptions which the Regulations confer."

The court in that case refused to follow United States v. Merchants National Trust & Savings Bank, 9 Cir., 1939, 101 F.2d 399, decided earlier, and covering precisely the same issue. We are of the opinion that it was correct in so doing.

It has been strenuously urged before us that the transactions with which we are

concerned are governed by Massachusetts law and that under G.L.(Ter.Ed.) c. 203, §§ 5 and 6, the transfer of property from one trustee to a succeeding one is automatic and is wholly by operation of law. This same contention was advanced in the City Bank case, supra, but was rejected. We are of the opinion that the fact that Massachusetts treats a certain transaction as being by operation of law does not remove it from the scope of the Federal Taxing Act. See Burnet v. Harmel, 287 U.S. 103, 110, 111, 53 S.Ct. 74, 77 L.Ed. 199; Morgan v. Commissioner, 309 U.S. 78, 80, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585.

The judgment of the District Court is affirmed.

---

[2] "(g) The transfer of stock from the decedent to the administrator or executor of the estate."

"(h) The transfer of stock from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the original trust agreement, which is a transfer resulting wholly by operation of law".

"(r) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor."