### EMPORIUM CAPWELL CO. v. ANGLIM, Collector of Internal Revenue.

### No. 10423.

Circuit Court of Appeals, Ninth Circuit.

Jan. 24, 1944.

Rehearing Denied March 1, 1944.

---

E. D. Turner, Jr., and Sloss & Turner, all of San Francisco, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, Homer R. Miller and Joseph M. Jones, Sp. Assts. to Atty. Gen., Frank J. Hennessy, U. S .Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, DENMAN and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The facts in this case, as stipulated by the parties and found by the lower court, are undisputed. The appellant taxpayer, the Emporium Capwell Company, a California corporation, and the Emporium Capwell Corporation, a Delaware corporation, in accordance with the laws of the States of California and Delaware, respectively, on December 22, 1939 entered into an agreement of merger whereby the Emporium Capwell Corporation was extinguished and the Emporium Capwell Company became the surviving corporation.

In order to effect this merger the laws of both states required a meeting of all the stockholders and approval of at least two-thirds. A majority of the board of directors also had to approve the merger agreement, and the agreement had to be filed with the Secretary of State after proper acknowledgment and approval of the stockholders.

The Emporium Capwell Corporation [the Delaware corporation] was the owner of 412,853 shares of the common stock of the Emporium Capwell Company [the California corporation] for which the Delaware corporation held one stock certificate and in addition had 412,853 shares of its own common stock outstanding, and also 7,-147 shares of treasury stock. The Emporium Capwell Company [California corporation] had only 412,853 shares of common stock and all this stock was owned by the Emporium Capwell Corporation [Delaware corporation], and evidenced by one stock certificate as mentioned above.

On consummation of the merger agreements, this certificate held by the Delaware corporation was delivered to a transfer agent and then new certificates in the surviving California corporation were issued to the persons who had owned the stock of the Delaware corporation in proportion to their respective ownership of that company. The Delaware corporation was extinguished. The 412,853 shares of common stock outstanding issued by the Delaware corporation, the merged corporation, were surrendered by the stockholders to the transfer agent. The 7,147 shares of treasury stock were surrendered to the California corporation and extinguished.

On June 10, 1941, the Commissioner of Internal Revenue assessed $16,514.12, a documentary stamp tax, on the transfer of the 412,853 shares of the common stock of the appellant to the former shareholders of the Emporium Capwell Corporation. The appellant paid the tax and on July 2, 1941, a claim for refund was filed, which claim was rejected.

The question on this appeal is whether the documentary stamp tax assessed by the Commissioner of Internal Revenue on the transfer of stock is collectible within the meaning of Section 1802(b) of the Internal

Revenue Code, 26 U.S.C.A. The lower court held that it was.

■ The appellant contends that the transfer here is one of stock in a merged corporation in exchange for stock of a merging corporation and is therefore exempt under Regulations 71, Article 35, division (e). Article 35(e) reads:

"Article 35. *Sale or transfer not subject to tax.*—The following are examples of transactions not subject to tax:

"(e) The transfer of the stock of a merged corporation in exchange for stock of a merging corporation at the time and as part of a statutory merger, and the substitution of new certificates for the certificates representing the old stock of the merging corporation."

The transfer in the instant case does not come within the meaning of the above section as the transfer in question here is a transfer from the surviving corporation of stock to the persons who held stock in the merged corporation and not a transfer from the merged corporation to the surviving corporation as provided in this subdivision of Regulation 71.

■ Appellant further contends that the transfer of stock in this case was by operation of law and exempt from the stamp tax under the provisions of Regulation 71, Article 35, subdivision (r), which reads as follows:

"Article 35. *Sales or Transfers not subject to tax.*

\* \* \* \* \* \* \*

"(r) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor."

In cases of merger and consequent transfer of stocks, the Government has consistently taken the position that the transfer of stock resulting through the voluntary acts of the parties, even though pursuant to statutory requirements, is not a transfer wholly by operation of law. The parties cooperated in accomplishing the merger. The Government's position has been upheld in other Circuits in a number of cases. In Weil et al. v. United States, 2 Cir., 115 F.2d 999, 1002, where the question in issue was whether a transfer of bonds to petitioners as trustees by the Mortgage Commission

was subject to tax, the court said: "\* \* \* It is perfectly true that in the case at bar there could be no transfer of title from the Mortgage Commission to the trustees until the court had confirmed the plan and the trustees accepted the trust, yet both events were conditioned upon the consent of two-thirds of the certificate-holders so that the transfer was due in a substantial degree to the voluntary acts of the latter who co-operated in effecting the passage of title. The transfer was not 'wholly by operation of law'."

■ The Weil opinion pointed out that there are a number of earlier New York cases which hold that similar transfers were by operation of law, but the Weil case takes the position that these New York State decisions, while of persuasive value, cannot determine what is taxable under a United States statute. The determination of what is a taxable transfer must be made in the light of departmental regulations and the interpretation of the act in federal courts.

The court in Koppers Coal & Transportation Co. v. United States, 3 Cir., 107 F.2d 706, 708, said: "Such a transfer of title is within the express language of Schedule A(3) of Section 800 and is precisely the example given in Article 34 (r) [1932 edition] of Treasury Regulations 71. The transfer of stock from Koppers Coal & Transportation Company to C.C.B. Smokeless Coal Company was not 'wholly by operation of law' since the voluntary act and participation of the constituent companies was required in order to effect the merger or consolidation."

The Koppers case also notes that although the state courts of New York had determined this question in favor of the taxpayer, the decisions of the state courts do not determine the application of a federal statute. Of like effect is Niagara Hudson Power Corp. v. Hoey, Collector of Internal Revenue, 2 Cir., 117 F.2d 414.

Two recent cases, State Street Trust Co. v. Hassett, 1 Cir., 134 F.2d 156, and City Bank Farmers' Trust Co. v. Hoey, Collector of Internal Revenue, 2 Cir., 125 F.2d 577, also do not follow the decisions of the New York state courts and hold further that the case of United States v. Merchants Nat. Trust & Savings Bank, infra, 101 F.2d 399, was wrongly decided.

In the United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 101 F.2d 399, in a case where there was a transfer

of stock held in trust through the sale of a trust business from a national bank and trust company to another bank, this court held such a "transfer [of stock] was wholly by operation of law", citing as authority the New York state cases which held that certain transfers were wholly by operation of law; as pointed out above, these state cases have not been followed by other federal circuits. However, in this Merchants Nat. Trust & Savings Bank case the California corporative law relative to transfers of stock provided that upon approval of the agreement of sale and transfer of the trust business the purchasing bank shall "by operation of law" be deemed to have succeeded to all rights, obligations, etc. This case can be readily distinguished from the one at the bar because the factual situation and legal question are different. In the Merchants Bank case, one bank purchased all the assets of another, including its trust department, and the tax was levied on the transfer of the legal title of private trusts held by the second bank as fiduciary. These transfers were made under the provisions of Deering's General Laws, Vol. 1, Art. 652, Sec. 31, which reads in part as follows: "* * * Upon the approval by the superintendent of banks of an agreement of sale and purchase and the transfer of the business of a trust department or of a bank having a trust department the purchasing bank shall, *ipso facto and by operation of law and without further transfer,* substitution, act or deed, and in all courts and places, be deemed and held to have succeeded and shall become subrogated and shall succeed to all rights, obligations, properties, assets, investments, deposits, demands, contracts, agreements, court and private trusts and other relations to any person, creditor, depositor, trustor, principal or beneficiary of any court or private trust, obligations and liabilities of every nature, and shall execute and perform all such court and private trusts in the same manner as though it had itself originally assumed the relation or trust or incurred the obligation or liability." [Emphasis added.]

The court's decision was based primarily on Regulations 71, Article 35(h), which provides that the transfer of stock from a resigned trustee to a substituted trustee results wholly by operation of law. In the Merchants Bank case the court held that the California statute was a part of the trust agreement and there was effected a resignation of one trustee, one bank, and the appointment of a substituted trustee. The statute under which the merger was effected provides that the purchasing bank shall "ipso facto and by operation of law" and without further transfer succeed to all rights and properties of the other bank.

In the United States v. Seattle-First Nat. Bank, 9 Cir., 136 F.2d 676, 677, this court had before it a case where there was a statutory consolidation of banks effected under the National Bank Act, 12 U.S.C.A. § 34a. Upon approval of the stockholders, the comptroller of currency issued the necessary certificate of approval of the consolidation. The court held: "In this circuit the point has been determined adversely to the position of the Treasury in the United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 101 F.2d 399. Further elaboration of the discussion there would serve merely to encumber the reports. The Court of Appeals of the Second Circuit in City Bank Farmers Trust Co. v. Hoey, 2 Cir., 125 F.2d 577, has reached a different conclusion and apparently the First Circuit has also [and the Third Circuit], State Street Trust Co. v. Hassett, 134 F.2d 156, so that if we are wrong the government is in a favorable position to ask that we be set right."

This case also involved a statute which required no deed or transfer of assets upon performance of statutory requirements for consolidation. The case did not involve the transfer of stock to the stockholders of the extinguished or merged corporation as does this case at the bar. In the instant case, the transfer was made to the individual stockholders as a result of a voluntary merger. There is no statute involved in this case which provides that such a transfer shall be by operation of law. Here, there was cooperation and participation of the stockholders, board of directors and the two corporations. The assets in this case could only be transferred to the stockholders in Delaware by the act of the parties.

Affirmed.