AMERICAN PROCESSING & SALES CO.
v. CAMPBELL.

No. 9295.

Circuit Court of Appeals, Seventh Circuit.

Dec. 9, 1947.

LINDLEY, District Judge, dissenting.

———◆———

Sewall Key and Morton K. Rothschild, Assts. to the Atty. Gen., Helen R. Carloss and Hilbert P. Zarky, Sp. Assts. to the Atty. Gen., J. Albert Woll, U. S. Atty., Joseph M. Solon, Asst. U. S. Atty., and Otto Kerner, Jr., U. S. Atty., all of Chicago, Ill., for appellant.

Herman A. Fischer and Carlton L. Fischer, both of Chicago, Ill., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The plaintiff-appellee, hereinafter referred to as the taxpayer, is a corporation organized and existing under the laws of Illinois. It is the surviving corporation in a merger of the Rapid Roller Company, an Illinois corporation and the merging corporation, with the Hawthorn-Mellody Farms Dairy, Inc., the surviving corporation whose corporate name was changed to American Processing & Sales Company. The Rapid Roller Company went out of existence upon the merger. The merger took place in accordance with the procedure prescribed by Illinois law [1] and pursuant to a plan which both corporations had adopted and which was approved by their stockholders. The essential terms of the merger were as follows:

"(a) The surviving corporation shall possess all the rights, privileges, immunities, and franchises (but not including stock in the surviving corporation) heretofore possessed by the merging corporation. All property, real, personal, and mixed, all receivables of whatever kind, all choses in action, and all and every other interest of or belonging or due to the merging corporation shall be taken and deemed to have been transferred to and vested in the surviving corporation without further act or deed, although the merging corporation shall execute such confirmatory deeds or other instruments as may be deemed appropriate.

"(b) The surviving corporation shall become and be responsible and liable for all obligations and liabilities of the merging corporation.

\* \* \* \* \* \*

---

[1] Ch. 32, §§ 157.61–157.69a, Ill.Rev. Stat.1947.

"The conversion of the presently outstanding 5405 shares of stock of the merging corporation into stock of the surviving corporation shall be accomplished as follows:

"There shall be issued to the present holders of shares of stock in the merging corporation, pro-rata, upon the surrender and cancellation of the certificates therefor, certificates representing 1500 shares of the preferred stock and 3800 shares of the common stock of the surviving corporation, said 5405 shares of stock of the merging corporation being changed into said 1500 shares of the preferred stock and 3800 shares of common stock of the surviving corporation."

Fifteen hundred shares of preferred and 3,800 shares of common stock of the taxpayer were issued by the taxpayer directly to the stockholders of the merging or nonsurviving corporation in proportion to their holdings in that corporation. Upon the issuance of this stock, pursuant to Sec. 1802(b) of the Internal Revenue Code[2] the Commissioner assessed a documentary stamp tax against the taxpayer in the amount of $265 on the ground that in substance the statutory merger gave the merging corporation the right to receive stock in the surviving corporation, which right the merging corporation had in substance transferred to its stockholders.

The taxpayer paid the tax and sued for refund. The District Court gave judgment for the taxpayer for the amount paid plus interest, holding that a taxable transfer by the merging corporation had not occurred. The Government has appealed.

The question presented to us is whether the issue by the taxpayer of its stock to the former stockholders of the merging corporation, pursuant to a merger plan adopted by the corporations and approved by the stockholders of both, all in accordance with the procedure prescribed by the Illinois statutes, involved a transfer by the merging corporation of the right to receive stock, within the meaning of the statute.

We think this case is ruled by the case of Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111. In fundamentals, we are unable to distinguish the law of that case. There are distinctions, but without a difference. There were two aspects in the Raybestos-Manhattan case. In the first, Corporation M by a statutory procedure was merged into the Raybestos-Manhattan Corporation, the latter corporation issuing its stock to the stockholders of the merged Corporation M. In the second aspect, Corporations R and U conveyed and transferred to the Raybestos-Manhattan Corporation all their assets in return for the issuance of the latter's stock to their stockholders. This second aspect of the case was taxed, and this was upheld by the Supreme Court. The Commissioner made no attempt to tax the first aspect. Therefore, that phase of the case was not before the Supreme Court. The case did not hold that the first, the merger, aspect was free from tax. That was left open.

As we understand the taxpayer, when the merger took place in the instant case in accordance with the Illinois statute, the merged corporation went out of existence and had no right to receive any stock from the surviving corporation and therefore had nothing to be transferred to its former stockholders. By this same operation, it is claimed, its old stockholders became, ipso facto, stockholders of the taxpayer. It was all accomplished by the alchemy of corporate fictions. Tax statutes are brutally realistic. They are rarely, if ever, thwarted by fiction.

Before the merger was approved by the Secretary of State and while the merging corporation was still in existence, the merg-

[2] 26 U.S.C.A. Int.Rev.Code, § 1802(b): "* * * On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), * * *."

ing corporation agreed by adopting and approving the plan of merger that in return for the surrender of its corporate assets to the surviving corporation, the quid pro quo was the issuance by the taxpayer of its stock to the then stockholders of the merging corporation. This effected the transmutation of the two corporations into one and effected at the same time the creation of but one group of stockholders.

■ If the merging corporation had no right to receive the stock, it seems clear that its former stockholders did, and they received the stock, all by virtue of and in accordance with a plan approved by the merging corporation and its stockholders. Since the statute is not to be read narrowly, this seems to us a "transfer" within the meaning thereof.

Whether the metamorphosis of these two corporations into one survivor holding all the assets of the former corporations and issuing its stock representing these assets to the stockholders of the non-surviving corporation, is in accordance with a private agreement, as in the second aspect of the Raybestos-Manhattan case, or whether such metamorphosis is by means of a merger procedure prescribed by statute, as in our case, the result is the same. Forms are not important. It is the end result that counts. The end result is the same in both cases. The one corporation winds up with all the assets, and the old stockholders of the other corporations wind up with the stock of this surviving corporation. We cannot believe that Congress intended to tax one result and not the other. The whole rationale of the Raybestos-Manhattan case is at war with such distinctions.

The words of Justice Stone in the Raybestos-Manhattan case are applicable here: "The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements. But we do not discern even a technical difference of any significance between such a transaction and that now before us, where the same duty to issue the stock is created and the same shift of the beneficiaries of it is effected simultaneously in a single document. No convincing reason is suggested why the act should be thought to tax the one and not the other." 296 U.S. at page 63, 56 S.Ct. at page 65, 80 L. Ed. 44, 102 A.L.R. 111.

At the time the Raybestos-Manhattan decision was handed down, the regulations of the Internal Revenue Bureau left open, as did that case, the question of whether the merger situation was within Sec. 1802 (b). Congress re-enacted Sec. 1802(b) several times thereafter while the Bureau's regulations were in that posture. Later, the Bureau decided that the statute authorized the taxation of the merger situation and amended its regulations[3] accordingly. This case arose after the last amendment.

■ The taxpayer contends that since Congress had acted while the regulations left open the question of taxing mergers, the Bureau could not thereafter change its regulations so as to include them; it contends that only Congress could do that. This contention has been clearly and conclusively answered to the contrary by the Supreme Court in Helvering, Commissioner of Internal Revenue, v. Wilshire Oil Co., Inc., 308 U.S. 90, 100, 60 S.Ct. 18, 84 L.Ed. 101.

The District Court's conclusion that there was no taxable transfer in this case within the meaning of Sec. 1802(b) was error. The judgment of the District Court is reversed and the cause remanded, with directions to proceed in accordance with this opinion.

LINDLEY, District Judge (dissenting).

Though the legal title to the property owned by the merging corporation was in that corporation, it was held for the benefit of its stockholders. After its creditors were satisfied, the corporation had no interest or title except for the benefit of its stockholders; each certificate of stock merely represented an aliquot undivided part of the assets of the corporation in reality owned by the certificate holder. Therefore, when, by virtue of a statutory merger, the merging corporation ceased to exist, it had no right to receive stock from the surviving corporation. But the

---

[3] 26 Code Fed.Regs., Secs. 113.30, 113.33, 113.34. (Cum.Supp.1943).

stockholders, the beneficial owners of the assets of the merging corporation, were entitled to receive something for their aliquot parts of the assets delivered to the surviving corporation,—something adequately equivalent to their undivided shares of the assets of the merging corporation. This they did receive in the form of certificates of stock in the surviving corporation and, upon issuance of that stock to them, a tax was paid as contemplated by the revenue act. By the merger the merging corporation died,—it no longer had any existence; legal title to the assets having been held by it merely for the benefit of its stockholders any rights emanating from the surviving corporation rightfully belonged to those stockholders and not to the corporation. I cannot read into this state of facts any right in the merging corporation to receive stock which it has transferred to its stockholders and which is subject to a transfer tax.

A merger or consolidation by which a surviving corporation succeeds to the assets of a merging corporation is entirely different from a sale of the property by one corporation and the purchase by another. Thus the Supreme Court of Illinois said in Chicago, Santa Fe and California Railway Company v. Mary Ashling, Admx., 160 Ill. 373, at page 380, 43 N.E. 373, 375: "The effect of this part of the transaction was to incorporate in the Santa Fe Company the stockholders of the St. Louis Company, combining all the stockholders of each company in one. This was an act of consolidation, and not by any means necessary to a mere purchase and sale. If the transaction could be distinguished from a consolidation as a mere purchase and sale, to be regarded as a fair one (and it should be so regarded for the purpose of the argument) the St. Louis Company itself, and not its individual stockholders, should have received all the consideration for the property conveyed, so that it would have the equivalent of the property sold with which to meet the obligations and liabilities which it had created or incurred." And the Appellate Court, in Chicago & Joliet Electric Ry. Co. v. Matilda S. Ferguson, 106 Ill. App. 356, at page 358, said: "A consolidation, not a purchase, is effected by the transfer of the franchise and all the property of one corporation to another under an arrangement by which the stockholders of the former company exchange their stock for stock in the latter company." "A sale implies a vendor and a vendee, and by it the former sells and transfers a thing that he owns to the latter for a price paid or to be paid to himself. The vendor parts with nothing but his property, and for it receives a quid pro quo. Such is not the case where companies are consolidated under this statute. It is true that the owners of each constituent road parts with its property. But it does much more. It not only parts with its property, but ceases to be a juristical entity, capable of owning or acquiring property. It does not, and could not, receive any consideration for the transfer, because it is extinguished and dissolved by the act of its stockholders in assenting to the proposed agreement." Compton v. Wabash, St. L. & P. R. Co., 45 Ohio St. 592, 16 N.E. 110, 117, 18 N.E. 380.

That the stockholders are the real parties in the transaction is apparent from the Illinois statute. Section 157.69, ch. 32, Illinois Revised Statutes provides that the surviving corporation shall constitute a single corporation; that the separate existence of the merging corporation shall cease; that the surviving corporation shall receive all the property, privileges, immunities and powers of the merging corporation and become liable for the debts of the merging corporation. Section 157.70 provides that if any stockholder dissents to the merger, he shall have a right to recover from the surviving corporation the fair value of his shares as of the date prior to the merger.

Inasmuch as the surviving corporation derives its right from grant of the state and not by way of transfer from the merging corporation (Diggs v. Fidelity & Deposit Co., 112 Md. 50, 75 A. 517, 20 Ann. Cas. 1274, and inasmuch as the property of the merging corporation was always held for the benefit of its stockholders, it seems to me to follow that the issue of stock by the surviving corporation to the stockholders can be made the subject of no more than one transfer tax. The stock-

holders merely gave up their old stock and received new stock, traded their stock in one corporation for stock in another, and upon this transfer tax was paid. The merging corporation having had no right to receive stock or anything else after it ceased to exist, issuance of the new stock to the stockholders did not amount to a transfer by the merging corporation to its old stockholders.

I think the facts are clearly distinguished from Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, where the court was dealing with a sale by one corporation and purchase by another. For the same reason the case is to be distinguished from United States v. Vortex Cup Company, 7 Cir., 84 F.2d 925.

I would affirm the judgment.