## U. S. INDUSTRIAL CHEMICALS, Inc. v. JOHNSON.

### No. 177, Docket 21576.

United States Court of Appeals
Second Circuit.

Argued Feb. 28, 1950.

Decided April 6, 1950.

414

Shearman & Sterling & Wright, New York City, Charles Goodwin, Brooklyn, N. Y., argued for appellant.

Irving H. Saypol, U. S. Atty., New York City, James A. Devlin, New York City, argued for appellee.

Before L. HAND, Chief Judge, and GOODRICH and FRANK, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal involves the applicability of the federal stock transfer tax imposed by Section 1802(b) of the Internal Revenue Code, 26 U.S.C.A. § 1802(b), to the merger of a parent corporation into its subsidiary.

The taxpayer appeals from an adverse decision of the District Court, S.D.N.Y.1949, 85 F.Supp. 639.

These are the facts: U. S. Industrial Alcohol Co., a West Virginia corporation, owned all the stock (100 shares) of U. S. Industrial Chemicals, Inc., a Delaware corporation. On July 16, 1943, the two corporations were merged in accordance with terms previously agreed upon. Upon consummation of the merger, the entire capital stock of Chemical was extinguished. The holders of the capital stock of Alcohol were treated as shareholders of Chemical, were allowed to vote their stock and to receive dividends. They were authorized, but not required, to exchange their old certificates for certificates of the continuing corporation. The stamp tax imposed by Section 1802(a) on the original issue of shares of stock was paid at the time of merger. In October, 1943, and January, 1944, the Commissioner assessed a transfer tax under Section 1802(b) on the number of shares of the stock of Chemical represented by the certificates which, by those respective dates, had been physically exchanged for shares of Alcohol.[1] Chemical paid the assessments and sued for a refund. The court below upheld the assessment and denied a refund.

It should be noted at the outset that Code Section 1802(a) taxes the original issue of stock and Section 1802(b) the transfer of stock or the right to receive it.[2]

1. The Commissioner's theory in assessing the tax on the number of shares thus exchanged is inconsistent with his argument made in this Court and which we are upholding. However, the taxpayer cannot successfully claim error because he wasn't taxed as much as he would have been had the tax authorities followed the correct theory.

2. "§ 1800. Imposition of tax
"There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or

printed, the several taxes specified in such sections."

"§ 1802. Capital stock (and similar interests)
"(a) Original issue. On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 (whether or not such investment trust or similar organization constitutes a corporation within the meaning of this title), on each $100 of par or face value or fraction thereof of the certificates is-

The District Judge discussed the point fully and understandingly. We can add little to his opinion, which concludes, "The two taxes attach to two different events. One does not preclude the other, even if they occur simultaneously." 85 F.Supp. at page 642.

The Government's point is that the merging corporation (Alcohol) as a result of the conveyance of its assets to the appellant (Chemical), which was the surviving corporation pursuant to the agreement, acquired a right to receive the stock of the surviving corporation and transferred this right to its shareholders. If it did there was a tax due under Section 1802(b) and if it did not there is nothing to the taxpayer's contention that it is being taxed twice for the same thing.

There was such a transfer here. Prior to July 15, 1943, Alcohol owned all the stock of Chemical. After that date, as a result of the merger, the people who had been stockholders of Alcohol owned all the stock of Chemical and Alcohol had disappeared. This change of ownership came, we think, by a transfer from Alcohol to its shareholders of the right to receive the Chemical stock. This is a necessary consequence of the merger transaction even though done in one step instead of two.

The taxpayer asks how one is to determine which entity survives the merger and which, if either, disappeared. The charter, it urges, "was merely the cloak worn by the consolidated business. Regardless of the result * * * the stockholders had only that which they had before."

The argument poses nice questions in legal metaphysics. We find no comfort in answering the questions by talk which appears in some of the decisions about this tax being applied to the reality of things instead of their form. We think the concepts we deal with here are artificial, as artificial as some of the law of contingent remainders.

The trouble comes in piling artificial concepts upon other artificial concepts. Thus a group of people engaged in a business enterprise incorporate themselves and create a new legal person. This is done for their own business convenience and is perfectly legitimate, but it creates some problems they would not have had if they had continued to conduct their business as individuals. Then, also for business reasons of their own, they set up another artificial corporate entity which, in turn, the first entity owns. When the tax gatherer comes around following dealings with these artificial creations the people who have set them up for their own convenience can hardly say that it was all just for fun and the dealings should not subject them to taxation. If there are to be dealings in these multiple forms of incorporation the tax consequences will have to follow.

There are two decisions which mark the path here. One is Raybestos-Manhattan, Inc. v. United States, 1935, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111. In that case two independent corporations, pursuant to a plan, transferred their assets to a third and the latter issued its stock directly to the shareholders of the former.

sued by such corporation or by such investment trust or similar organization (or of the shares where no certificates were issued), 11 cents: * * *

"(b) Sales and transfers. On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued) 5 cents and where such shares or certificates are without par or face value, the tax shall be 5 cents on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other organization share, as the case may be): * * *."

The Supreme Court found a taxable transfer of this stock from the merging corporations to their shareholders. Likewise on the point is a decision of the Seventh Circuit in American Processing and Sales Co. v. Campbell, 1947, 164 F.2d 918, certiorari denied, 1948, 333 U.S. 844, 68 S.Ct. 661, 92 L.Ed. 1127.[3]

The taxpayer urges that the Seventh Circuit case is wrong and urges also a distinction between "vertical" and "horizontal" mergers. We think there is nothing to the distinction, taxwise at any rate. The substance of the transaction here is the same as in the cases just cited. Those decisions also dispose of any possible question of the effect of local corporation law upon the federal tax problem.

Affirmed.

3. See also Emporium Capwell Co. v. Anglim, 9 Cir., 1944, 140 F.2d 224, certiorari. denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582 and cases discussed therein.