**WESTERN MASSACHUSETTS ELECTRIC CO. v. UNITED STATES.**

Civ. No. 50–271.

United States District Court
D. Massachusetts.

Sept. 21, 1951.

Howard W. Brown, Gerald E. Fosbroke, Boston, Mass., for plaintiff.

George Garrity, U. S. Atty., Philip T. Jones, Asst. U. S. Atty., Boston, Mass., for defendant.

McCARTHY, District Judge.

This action is brought to recover money exacted by the United States as federal stock transfer taxes in the amount of $9,827.70 paid January 21, 1944.

The facts, which are embodied in a stipulation, including certain exhibits thereto and to the complaint, and which have been made parts thereof, are as follows:

1. At the end of the year 1942, Western Massachusetts Companies, a Massachusetts voluntary association holding company, owned the entire capital stock of four Massachusetts public utility corporations: Western Massachusetts Electric Company (hereinafter called the taxpayer or the surviving corporation), whose capital stock prior to merger consisted of 166,256 shares of $25 par value each; Pittsfield Electric Company (hereinafter called Pittsfield) with 31,160 shares outstanding of $100 par value each; United Electric Light Company (hereinafter called United) with 221,575 shares outstanding of $25 par value each; and Turners Falls Power and Electric Company (hereinafter called Turners Falls) with 110,000 shares outstanding of $100 par value each.

2. On June 5, 1939, the taxpayer, Pittsfield, United and Turners Falls had entered into a written merger or consolidation agreement, approved by at least a two-thirds vote of the outstanding stock of each of the four companies. Several amendments extended the effective date of the merger, the last fixing it as of the close of business on December 31, 1942.

3. The agreement provided that the merger should be accomplished as follows: (a) The taxpayer was to retain its corporate existence and was to enjoy all the

powers, rights, locations, licenses, privileges and franchises of the companies to be merged with it; (b) each company to be merged with the taxpayer was to transfer and convey to the taxpayer all of its assets, subject to its outstanding liabilities, except its capital stock, which was to be assumed by the taxpayer; and (c) the taxpayer was to issue 786,215 shares of its capital stock, of the par value of $25 a share, to the stockholders of the several companies to be merged with it, in exchange for the shares of such companies which were then outstanding, giving to each stockholder that number of shares so issued of which the aggregate par value would be equal to the aggregate par value of the shares of such company to be merged which were held by him at the time of merger.

4. The merger became effective as of the close of business on December 31, 1942.

5. The taxpayer issued 786,215 additional shares of its capital stock of the par value of $25 each. The par value of this new stock when added to the total par value of the stock of the taxpayer prior to merger totaled $23,811,775, equalling the pre-merger par value of all the capital stock of the four merging corporations. The new shares were not issued to the other three companies, but all certificates were issued directly to Western Massachusetts Companies, the parent association.

6. A tax was paid on the original issue of the stock, and on January 14, 1944, the Commissioner of Internal Revenue assessed a tax on the transfer from Pittsfield, United and Turners Falls to Western Massachusetts Companies of the right to receive the new shares of the taxpayer.

The amount of such tax, if due, is not in dispute.

Section 1802(b) of the Internal Revenue Code, 26 U.S.C.A. § 1802(b) [1] imposes a tax on transfers of corporate stock and on transfers of the right to receive such stock. The question is whether there was a taxable transfer to Western Massachusetts Companies of the right to receive the new stock of the taxpayer issued in connection with the merger. If the answer be in the affirmative, the tax was imposed properly upon the surviving corporation which issued the stock certificates. 26 U.S.C.A. § 1809.

In Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, the Supreme Court held that a transfer tax is due where one corporation conveys its property to another in return for a specified number of its shares of capital stock, issued not to the conveying corporation, but directly to its stockholders in proportion to their holdings. The following, 296 U.S. at page 62, 56 S.Ct. at page 64, is applicable to the present case: "While the statute speaks of transfers, it does not require that the transfer shall be directly from the hand of the transferor to that of the transferee. It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another."

Here, Pittsfield, United and Turners Falls surrendered their corporate assets to the surviving corporation. The right was theirs to require in return that the new stock of the survivor be issued to them. Since, however, these corporations were to become non-existent upon merger, this right to receive the stock was "vested" in the parent holding company in accord-

---

1. "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any man- ner to the benefit of such share, certificate, interest, or rights, or not), on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued) 5 cents and where such shares or certificates are without par or face value, the tax shall be 5 cents on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other organization share, as the case may be): * * *"

ance with the consolidation agreement. The right to or interest in the new shares was relinquished by the corporations and vested in the association.

The plaintiff contends that the Raybestos decision is no authority where a statutory merger is involved. It is true that in the Raybestos case the consolidation was effected by private agreement, whereas here a merger was accomplished pursuant to Mass.General Laws (Ter.Ed.) c. 164, §§ 96 and 99. The principle above-quoted, however, is applicable none the less.

The applicability of the transfer tax to the merger situation was decided by the Court of Appeals for the Seventh Circuit in American Processing & Sales Co. v. Campbell, 164 F.2d 918, 919. There the question presented was whether "the issue by the taxpayer of its stock to the former stockholders of the merging corporation, pursuant to a merger plan adopted by the corporations and approved by the stockholders of both, all in accordance with the procedure prescribed by the Illinois statutes, involved a transfer by the merging corporation of the right to receive stock, within the meaning of the statute." The Court decided in the affirmative, stating, 164 F.2d at page 920, that: "Whether the metamorphosis of these two corporations into one survivor holding all the assets of the former corporations and issuing its stock representing these assets to the stockholders of the non-surviving corporation, is in accordance with a private agreement, as in the second aspect of the Raybestos-Manhattan case, or whether such metamorphosis is by means of a merger procedure prescribed by statute, as in our case, the result is the same. Forms are not important. It is the end result that counts. The end result is the same in both cases. The one corporation winds up with all the assets, and the old stockholders of the other corporations wind up with the stock of this surviving corporation. We cannot believe that Congress intended to tax one result and not the other. The whole rationale of the Raybestos-Manhattan case is at war with such distinctions".

The Court of Appeals for the Second Circuit reached a similar result when confronted with the case of a so-called "vertical" merger. One corporation owned all the stock of a second. The two merged in accordance with terms previously agreed upon. The entire capital stock of the second was extinguished, and the holders of the capital stock of the first were treated as shareholders of the second, were allowed to vote their stock and receive dividends. They were also authorized to exchange their old certificates for certificates of the continuing corporation. A transfer tax, assessed on the number of shares of the stock of the second corporation represented by the certificates which had been physically exchanged for shares of the continuing corporation, was upheld, the Court stating that the substance of the transaction was the same as in the Raybestos and American Processing cases. U. S. Industrial Chemicals v. Johnson, 2 Cir., 181 F.2d 413.

The cases cited thus far are, as contended by the plaintiff, distinguishable from the present case on their facts. A factual situation more closely approaching the one presented here is described in United States v. Niagara Hudson Power Corporation, D.C., 53 F.Supp. 796. There Niagara Hudson, a New York corporation, capital stock of two other corporations, was the owner of all issued and outstanding Northern and Oswego. A merger plan was prepared and approved by Northern and Oswego whereby Oswego was consolidated with and into Northern which continued in existence. The issued and outstanding shares of Northern stock, all owned by Niagara Hudson, were continued without change in form. Northern, upon merger, issued 37,500 new shares of stock directly to Niagara Hudson, the parent corporation. The Court upheld a tax imposed on the "transfer from Oswego to Niagara Hudson of the right to receive the 37,500 shares of Northern", stating: "Normally the 37,500 shares would have been issued to Oswego, which would have distributed it to its stockholders and the stockholders could have held or sold it as they saw fit, but a short cut was adopted and it was issued directly by Northern to Niagara Hudson. The generating source

of the right to receive the newly issued shares of Northern was the conveyance to it by Oswego of all of Oswego's assets. Oswego in consideration for transferring its assets to Northern received the right to the 37,500 shares of stock which Northern issued. Under the plan of consolidation Oswego transferred the right to the 37,500 shares to Niagara Hudson." 53 F.Supp. at pages 798, 799, 800. Such is the situation here.

The plaintiff argues that immediately before the merger the voluntary association held stock of a par value of $23,811,775 representing the entire stockholder interest in certain assets (those of the four corporations), subject to certain liabilities, and that after the merger it held stock of the same par value, representing the entire stockholder interest in exactly the same assets, subject to exactly the same liabilities. This is not denied. On the other hand, with respect to the taxing statute, it makes no difference whether the stock in the merged corporations is held by several persons who received proportionate shares of the stock of the surviving corporation, or by one person. The plaintiff also places emphasis upon the difference between a statutory merger and a merger by purchase and sale. Both are provided for in § 96 of Mass.General Laws (Ter.Ed.) c. 164. This distinction, it is contended, cannot be dismissed as merely metaphysical, and since the law-making bodies of Massachusetts recognized the distinction, this Court must recognize it regardless of whether other courts concerned with other statutes might have felt justified in failing so to do. The short answer is that while the distinction is recognized, the meaning and effect of the transaction under a federal revenue statute, although effected in accordance with Massachusetts law, is determined by federal law. Founders General Corp. v. Hoey, 300 U.S. 268, 275, 57 S.Ct. 457, 81 L.Ed. 639.

The taxpayer contends also that there is no taxable transfer here involved because Treasury Regulations, which acquired the effect of law by continued application to the substantially re-enacted applicable section of the Internal Revenue Code, so held, at least until 1942. The changed language it is argued, of the 1941 edition of the Regulations, could not legally change the rule established over fifteen years prior thereto.

The regulation which assertedly exempts the transfer here involved is Regulation 71, Article 35, division (e) 1932 edition, which is substantially the same as Article 35(e) of the 1926 edition of Regulations 71. It cites as an example of a transaction not subject to tax: "(e) The transfer of the stock of a merged corporation in exchange for stock of a merging corporation at the time and as part of a statutory merger, and the substitution of new certificates for the certificates representing the old stock of the merging corporation".

The transfer in this case, however, does not fall within the meaning of the quoted regulation. This subdivision has been interpreted as applying to "a transfer from the merged corporation to the surviving corporation". Emporium Capwell Co. v. Anglim, 9 Cir., 140 F.2d 224, 226. We are here concerned with a transfer to the parent association which held the stock of the four merging corporations.

The entry must be

Judgment for the Defendant.